May Term, 1853.

WRIGHT
v.
BROWN.

---

## WRIGHT and Others *v.* BROWN.

The owners of a steamboat, knowing the manner in which a flat-boat is fastened to the shore, are liable for the loss of the flat-boat and cargo occasioned by waves created by the steamboat while running out of the usual channel for such boats, under a full head of steam, near to the flatboat—if the persons in charge of the flat-boat have used all proper efforts to save the boat and diminish the damage occasioned by the waves.

It is no answer to an action brought for the loss, under such circumstances, that if the flat-boat had been tied to the shore in an ordinarily secure manner, it would have escaped injury.

May Term,
1853.
_____
WRIGHT
v.
BROWN.
Wednesday,
May 25.

ERROR to the *Jefferson* Circuit Court.

PERKINS, J.—*Brown*, the owner of a flat-boat, brought an action against *Wright* and others, the owners, &c., of the steam-boat *Wisconsin*, alleging that while his, said *Brown's*, flat-boat was moored at the wharf in the city of *Madison*, on the *Ohio* river, laden with a cargo of, &c., of the value, &c., the defendants carelessly ran said steam-boat past said flat-boat, under a much greater head of steam than usual, and out of the ordinary channel, thereby producing waves of such violence, and so near to said flat-boat, that it was forced from its moorings, thrown upon a post on the shore, broken, sunk, &c., to the damage, &c.

Plea, the general issue. Jury trial. Verdict and judgment for the plaintiff for 240 dollars, and costs.

The evidence upon the record shows that *Brown* had a flat-boat at the *Madison* wharf, laden with hollow stoneware; that said boat was moored with "one anchoring line, having an anchor attached, quartering up and out into the river from the bow, a head-line almost straight up the river, and a breast-line to the shore," and was in charge of one *Montgomery;* that said boat had been lying at the wharf for some days; that on the 17th of *December*, and while said flat-boat was so lying at the *Madison* wharf, the steam-boat *Wisconsin*, a new boat just finished at *Madison*, and lying at the wharf about one hundred yards below the flat-boat, left said wharf to make her first trip, backed down some one hundred or two hundred yards, and then came up under a full head of steam, out of the customary channel for boats, and near the *Indiana* shore, in order, as the evidence is, "to show off," whereby the waves were produced which occasioned the destruction of the flat-boat and cargo in question. It further appears that everything was done that could be done, after the injury occurred, to save the flat-boat and cargo.

The circuit judge, in his instructions to the jury, said, "I hold it to be the duty of the officers of steam-boats when arriving at, departing from, or passing by, a landing at which flat-boats are moored, to run and manage their boats with a due regard to the safety of the flat-boats.

They ought, at such times, to run their boats with less

velocity than usual, and carefully avoid approaching or passing so near to the flat-boats as to endanger their safety. On the other hand, flat-boats ought not to be moored so near to the usual place of steam-boat landing as to render it inconvenient for steam-boats to get in or out without danger to the flat-boats.

"If you are satisfied from the evidence that the officers of the *Wisconsin* were guilty of gross carelessness in running their boat with greater velocity and nearer the shore than was proper under the circumstances, and so caused the plaintiff's boat to sink; and are also satisfied that if they had run their boat with reasonable velocity, and at a proper distance from the shore, and with reasonable care, the plaintiff's boat would not have been injured; you ought to find for the plaintiff, whether his boat was fastened to the shore and managed with ordinary care and skill or not, for in such a state of circumstances the loss was occasioned by the improper manner of running the *Wisconsin*, and would not have occurred but for that, and is, therefore, wholly attributable to that cause."

To this instruction the defendant excepted.

We shall consider this case as one of collision between the vessels; for it must be the same thing in principle, whether the steam-boat ran upon the flat-boat, or forced some other object upon it, to produce the injury; and we must consider the instruction in its application to the case in which it was given, as presented by the evidence, all of which is upon the record.

We have then, in short, this state of facts. A flat-boat is moored at the *Madison* wharf, perhaps not as securely as is customary (though the preponderance of evidence is that it was); the steam-boat *Wisconsin* is lying at the same wharf, and had been so long, and so near to the flat-boat, that she must be presumed to know the manner in which said boat was fastened to the shore. The steam-boat voluntarily leaves the wharf, backs down to a point some three hundred yards below the flat-boat, and then comes up, contrary to the usual custom of boats on the

river, and wrongfully, under a full head of steam, out of the regular channel, and near to the flat-boat, producing a collision or waves by which said flat-boat is destroyed, though all proper efforts are made, at the time, by the person in charge, to save it and to diminish the damage occasioned by the collision; and the question is, can the owners of the steam-boat say, in answer to a suit for damages, that if the flat-boat had been tied to the shore in an ordinarily secure manner, it would have escaped injury? It seems to us that they cannot.

By the maritime law, where a collision happens and both boats are in fault, the injured or the more injured boat recovers of the other an amount that will equalize the loss between them. At common law, however, the general principle is, that a party cannot recover anything for an injury which his own fault directly contributes to produce. *Halderman* v. *Beckwith*, 4 McLean 286. *Strout* v. *Foster*, 1 How. U. S. R. 89. But there is a class of cases establishing this doctrine, that where the wrongful act immediately causing the injury, is the work and through the fault of one party alone, he shall be liable for it, even though the damage such act occasions may be increased or entirely result through some previous neglect of the other party in respect to the thing injured; and especially if the party committing such wrongful act knows, at the time, of the previous neglect of the opposite party. We notice a few of these cases. *Davies* v. *Mann*, 10 Mees. and Welsby, 546, was this: The plaintiff turned his donkey, fettered, into the public highway, which was an illegal act. "The defendant's wagon, with a team of three horses, coming down a slight descent, at what the witness termed a smartish pace, ran against the ass, knocked it down, and the wheels passing over it, it died soon after." It was proved that the driver of the wagon was, at the time, some little distance behind the horses. It was held that the plaintiff was entitled to recover for the ass, notwithstanding his own wrongful act in turning it fettered into the highway. "Were this not so," said *Parke*, B., "a man might justify the driving over goods

left on a public highway, or even over a man lying asleep there, or the purposely running against a carriage going on the wrong side of the road."

*Brownell* v. *Flagler*, 5 Hill, N. Y., 282, was as follows: *Flagler* was passing with a flock of about twenty lambs, which he had sold to a drover. A lamb belonging to *Brownell* was in the highway, and joined the flock of *Flagler*, going with it to the yard of one *Sherman*, where the flock was left for the drover, who, the next day, took away the flock, *Brownell's* lamb being in it, to market. *Flagler* was held liable to pay *Brownell* for his lamb, though he did not sell it to, or receive anything from, the drover for it. *Bronson*, justice, in delivering the opinion of the Court, said, that there might "have been some slight degree of negligence on the part of the plaintiff in allowing his lamb to escape into the highway," but still the defendant knowingly drove away the lamb, when he might have separated it from his flock, and that he was in fault for not doing it.

*Inman* v. *Galt*, 7 B. Monroe 538, was a case of collision between two flat-boats, at the wharf at *Louisville*. The defendant carelessly ran against the plaintiff's boat, doing serious damage. The defendant contended that he ought not to be liable for said damage, because the boat injured was a weak one, and that, had it been a boat of ordinary strength, the collision would not have injured it. *Marshall*, C. J., in delivering the opinion of the Court, says: "The weakness of the plaintiff's boat, as it rendered it the more liable to injury from collision, called for greater precaution on the part of those who knew the fact. If the defendant did not know it, he was still bound to use the means proper to prevent collision, and if it occurred without the use of such means on his part, and without fault on the part of the plaintiff, the greater damage consequent upon the weakness of the boat, must fall upon the defendant." So we say in this case, as to any increased damage resulting from the flat-boat not being tied as firmly to the shore as it might have been. In the *New Haven Steam-boat*, &c., *Co.* v. *Vanderbilt*, 16 Conn. R.

May Term,
1853.

420, a case of collision, where the defendant contended the plaintiff was in fault in not showing lights, the colli- sion having occurred in the night, the Court say: " While, on the one hand, a party shall not recover damages for an injury which he has brought upon himself, neither shall he be permitted to shield himself from an injury which he has committed, because the party injured was in the wrong, unless such wrong contributed to produce the injury; and, even then, it would seem a party is bound to use common and ordinary caution to be in the right. Lord *Ellenborough*, in *Butterfield* v. *Forrester*, 11 East 60, said, 'a party is not to cast himself upon an obstruc- tion which has been made by the fault of another, and avail himself of it, if he do not himself use common and ordinary caution to be in the right.' "

*Per Curiam.*—The judgment is affirmed, with 3 per cent. damages and costs.

*J. G. Marshall* and *J. Sullivan*, for the plaintiffs.

*W. M. Dunn* and *A. W. Hendricks*, for the defendant.