## Wright *v.* Gaff and Another.

A judgment will not be reversed on account of the improper admission or rejection of testimony, if the testimony could not have had any material influence.

A witness was admitted to testify, while the R. S. 1843 were in force, whose competency was objected to on account of interest. The extent of the interest of the witness was stated by the Court to the jury. The R. S. 1852 having taken effect during the pendency of the writ of error, *held,* that the interest of the witness furnished no ground for a reversal of the judgment.

A party who, by cross-examining a witness as to facts and circumstances not connected with the matters stated in his direct examination, elicits evidence to his prejudice, can not afterward object that such evidence was inadmissible.

Suit against the proprietor of a steamboat for negligence in towing a flat-boat, by which the cargo of the flat-boat was sunk and greatly damaged. There was evidence tending to show that the flat-boat had been unskilfully loaded, so as to render the towing more hazardous; but that the defendant was apprised of the fact, and that the immediate cause of the injury was the gross

carelessness of the defendant, in towing the boat at an improper speed. It was also shown that the plaintiffs agreed in writing that the flat-boat should be towed at their risk.

*Held,* that, without the writing, the defendants were liable for the injury.

*Held,* also, that the writing did not exempt the defendants from liability for gross negligence.

May Term, 1855.

WRIGHT
v.
GAFF.

ERROR to the *Dearborn* Circuit Court.

Monday, June 11.

PERKINS, J.—Trespass on the case by *Gaff* and *Gaff* against *Wright,* captain of the steamboat *Wisconsin,* for negligently towing a flat-boat loaded with corn, whereby loss accrued. Plea, the general issue. Trial by jury. Verdict for 300 dollars. Motion for a new trial overruled, and judgment on the verdict.

The testimony given on the trial is spread upon the record, and, as to the main facts of the case, is without conflict.

The flat-boat was loaded with about three-fourths of a full load of corn, at *Florence,* on the *Ohio* river, by one *Mitchell,* who had the boat in charge for the *Gaffs;* was taken in tow by the steamer *Wisconsin No.* 2, for *Aurora,* a port up the *Ohio* from *Florence,* and was towed by said steamer a portion of the distance, when, the flat-boat having become filled with water and commenced sinking, it was run ashore and left. The flat was a good sound boat. It was loaded heavier at the stern than at the bow, and all the witnesses agree that it should have been; but there is a conflict among them upon the point whether it was not too heavily loaded in that part.

A flat-boat properly loaded, say all the witnesses testifying upon the point but one, may be towed with safety from two to four miles an hour, according to the state of the river. One of the defendant's witnesses goes up to five or six miles an hour for the highest speed. In this case, the river was high, rough, and rapid, and the towing was up stream, against the current; and, says *Dunning,* the principal witness of the defendant and the only witness in the case who gives the speed of the steamer, was at the rate of from seven to eight miles an hour. The boat was towed for hire.

The defendant put in evidence the following agreement: "*December* 20, 1850. Steamer *Wisconsin No.* 2 agrees to tow one corn-boat from *Florence* to *Aurora*, for *T.* and *J. W. Gaff*, at their risk, to which the undersigned, agent, agrees. *R. H. Mitchell*, for *T.* and *J. W. Gaff*." And examined said *Mitchell*, who had been introduced by the plaintiff to testify to a few points that were fully covered by other witnesses, touching the execution by him of said contract, his power to make it, &c.; which examination, with the cross-examination of the plaintiff on the point, tended to show that said writing was obtained from the witness, *Mitchell*, by fraud.

The defendant, captain *Wright*, examined the flat-boat before he took it in tow, objected that it was too heavily loaded astern, but nevertheless took it.

A flat-boat in tow is entirely under the control of the mate of the towing steamer.

If the finding for the plaintiff was right, the amount of damages assessed is not objectionable, under the evidence.

The Court suppressed the following in *Vaughan's* deposition, because it was hearsay. "I hallooed down to the watchman, and asked him if he thought he was gaining any on the water. He answered back to me that the water was gaining still in the boat faster than he could throw it out." These facts were proved, however, by other witnesses.

The Court permitted a witness for the plaintiff to state that a hand on the steamboat said he believed he would run the flat-boat against a snag and sink her. A witness of the defendant explained that the hand said he would not care if they sunk her, &c.

It is objected that the extract from *Vaughan's* deposition should not have been suppressed, and that the statement of the hand about snagging the boat should not have been rehearsed to the jury.

*Mitchell*, as we have stated, was examined touching certain matters by the plaintiff. It is objected that he was an interested witness, and that questions to him were put in a leading form. His interest is asserted to arise from the

May Term,
1855.

Wright
v.
Gaff.

fact that he was the servant of the *Gaffs* in loading the flat-boat, and might be liable to them if she was improperly loaded whereby loss happened.

As to the correctness of the rulings of the Court in rejecting the first and admitting the second of the above-mentioned items of evidence, and in admitting the testimony of *Mitchell*, in answer to the questions as propounded, or at all, we shall make no inquiry; for the testimony, admitted or rejected, could not materially affect the case, as will be seen in the progress of this opinion; and such being the fact, a reversal could not be obtained on account of it. *Parker* v. *The State*, 8 Blackf. 292.— 2 Swan's Pr. 926.—*Stoddard* v. *The Long Island Railroad Company*, 5 Sandf. (N. Y.) R. 180.

And as to the testimony of *Mitchell*, we may further remark, that now, by statute, he would at all events be a competent witness. His interest, if such he had, would go only to his credibility. Such was precisely the situation of the witness as he stood before the jury on the trial which has been had, for the Court instructed that if he improperly loaded the boat, thereby occasioning loss, he would be liable to the *Gaffs*. No reason, therefore, can exist for a reversal of the judgment on account of the admission of *Mitchell* as a witness.

The defendant below contends, however, that a portion of his testimony went to contradict and invalidate the written instrument signed by him, and, for this reason, should have been excluded; but the answer to this position is, that the objectionable testimony, if such it was, was called out by the party objecting to it. The plaintiffs, in their examination in chief, made no allusion to the written contract, and nothing was said by the witness about it or its contents; and had the defendant limited his cross-examination to the matters of the original, no testimony would have been elicited touching the writing in question. But the defendant did not so limit his cross-examination. He proceeded to examine the witness upon divers new topics, the writing copied above being one, thus making the witness, as to such examination, his own,

and he can not now complain, nor could he below, of testimony voluntarily given to the jury by himself. In *The Philadelphia, &c., Railroad Co.* v. *Stimpson,* 14 Peters 448, says *Story,* justice,—"The principle is now well established, although sometimes lost sight of in our loose practice at trials, that a party has no right to cross-examine any witness except as to facts and circumstances connected with the matters stated in his direct examination. If he wishes to examine him to other matters, he must do so by making the witness his own, and calling him, as such, in the subsequent progress of the cause." Here, instead of calling him subsequently, the defendant proceeded to the examination, upon new topics, on the cross-examination; but the testimony so elicited was his own.

These preliminary points being disposed of, we are prepared to advance to the meritorious questions in the cause.

According to the great preponderance of evidence, no loaded flat-boat could have been towed with safety, in the then state of the river, more than four miles an hour; yet it is proved that the one in question was towed from seven to eight miles an hour till it commenced sinking. Here, then, is a clear omission to use ordinary care—a clear case of gross negligence—in a matter sufficient to cause the loss that happened; and the question is, does anything appear in the record that will exempt the steamboat, guilty of the negligence, from liability?

Counsel assume that the flat-boat was not properly loaded, and then take the position that the loss happened in part from that cause, which, being the fault of the owners of the flat-boat, precludes their right of recovery. Conceding that the flat-boat was not skilfully loaded, still the fact contributed but remotely to the result that occurred. The owners of the flat-boat were guilty of no negligence after the steamer took it in charge; all the carelessness immediately connected with the loss was upon the part of the steamer. It can not be shown that, in the absence of that carelessness, the loss would have happened, and the steamer can not escape from responsibility for her own wrongful acts, upon a conjecture that

the like consequences might have resulted without them. The immediate cause of the loss was the wrongful act of the steamer, and for it she must be liable, unless other facts in the case will exempt her. *Wright et al.* v. *Brown*, 4 Ind. R. 95, and the cases there cited.

It is claimed that there is one other fact appearing which will work the exemption, viz., the agreement of the agent, *Mitchell*, that the flat-boat should be towed at the risk of the owners. To this point we turn our attention, and shall first address ourselves to the question as to the effect to be given to the contract to transport at the owners' risk. Did that contract release the steamboat from the obligation to use ordinary care in the transportation? In a like case, *Alexander* v. *Greene*, 3 Hill (N. Y.) R. 9, such a contract was held to go to that extent, on the ground that the towing boat was not to be treated as a common carrier. That case was decided in 1842, by the Supreme Court of *New-York*, and was forthwith incorporated into the elementary treatises as law. But in 1844 the case was reversed in the Court of Errors of the same state, by a vote unanimous save one, and the contract held not to exempt from reasonable care, even though the boat should not be regarded as a common carrier; 7 Hill 553; the profession, in the meantime, having been misled by a "late case." And in 1848 the question was put at rest by the Supreme Court of the *United States*, in *The New-Jersey Steam Navigation Co.* v. *The Merchants' Bank of Boston*, 6 How. 344, in which case a decision was made precisely in harmony with that of the *New-York* Court of Errors. A like decision was made by the Superior Court of *New-York* city, in 1851. *Stoddard* v. *The Long Island Railroad Company*, 5 Sandf. 180.

The question was made and argued, as we have seen, in *Alexander* v. *Greene*, *supra*, both in the Supreme Court and Court of Errors, whether those engaged in towing canal and flat-boats, as in the case now before this Court, were common carriers. In the Supreme Court it was held that they were not; but in the Court of Errors six senators delivered opinions, four holding that they were, and

two the contrary, and the Court left the question unde-cided. *Lawrence*, senator, after quoting from and commenting on *Smith* v. *Pierce*, 1 Louis. R. 349, a case in which towing-boats are held common carriers, concludes his opinion thus :

" The case of *Adams* v. *The New - Orleans Steam Tow-Boat Co.*, 11 Louis. R. 46, is one confirming the previous decision made in *Smith* v. *Pierce*. In *Sproul* v. *Hemmingway*, 14 Pick. R. 1, the Supreme Court of *Massachusetts* admit the correctness of the doctrine laid down by the Courts of *Louisiana*. And judge *Story* sustains the same view of the question in strong and emphatic terms. Story on Bailment, s. 495, 1st Ed., *a*. [To the same effect is *Vanderslice* v. *The Steam Tow-Boat Superior*, in the *Pennsylvania* District Court of the *United States*, decided in 1850.—Angell on Carriers, 2d Ed., p. 673, note.] I consider it useless to multiply authorities on this point. It is a fact which can not be controverted, that their weight is on the side of making the defendants liable as common carriers. Public policy and public safety require it."

Subsequently, in 1849, the question arose again in *Wells and Tucker* v. *The Steam Navigation Company et al.*, in the *New-York* Court of Appeals, 2 Com. 204, when *Bronson*, J., who delivered the opinion in 3 Hill, *supra*, which was set aside in 7 Hill, *supra*, thus describes this latter case :

" But what particular point or principle of law was decided by the Court, or what a majority of the members thought upon any particular question of law, no one can tell. It appears by the reporter's head-note that he could not tell; and from his note at the end of the case, it is apparent that the Court itself could not tell. Two merchants and two lawyers thought the defendants were common carriers, while other senators expressed a different opinion, and went upon other grounds; and it does not appear that more than four of the seventeen senators who voted for the reversal were agreed concerning any one of the questions in the case. Two efforts were made at the time to ascertain 'the ground of the judgment;' but both proved abortive; and thus the majority virtually said, that

although the judgment was reversed, no point or principle of law was settled by the decision. It happened in that case, as it has happened on other occasions, that a majority of the members of that multitudinous Court made up their minds to reverse a judgment, and they did it; but not being able to agree concerning the ground of their action, they plainly enough admitted that nothing was settled by the decision. The case is not authority for anything." And the Court proceed to reaffirm the doctrine in 3 Hill, that towing steamers are not to be treated as common carriers.

This question has been raised and discussed by counsel in the present case also, and it is one of importance, which can not fail to require a determination from this Court, sooner or later, as the business of towing is considerably practised upon our western waters. Hence, we have felt justified in noting the decisions that have been made upon it, though a necessity for deciding it does not now exist, the steamer in this case being liable for gross negligence, independently of her character as a common carrier.

*Per Curiam.*—The judgment is affirmed, with 2 per cent. damages and costs.

*D. S. Major* and *A. Brower*, for the plaintiff.
*E. Dumont* and *W. S. Holman*, for the defendants.