## NEAL and Another *v.* SCOTT and Another.

PRACTICE.—Where, after the court has stricken out a paragraph of a pleading, the party amends and refiles the paragraph, error cannot be assigned on the action of the court.

PLEADING.—Suit for damages caused by the sinking of a flat boat while it was being towed by the defendants' steamboat. The complaint alleged

Neal and Another *v.* Scott and Another.

that the loss resulted from the unskillfulness and negligence of the defendants, their servants, &c. Answer, 1st. General denial. 2d. That the loss resulted from the fault and negligence of the plaintiffs.

*Held,* that the second answer amounted only to a denial, and was properly stricken out on motion.

NEGLIGENCE.—On the trial the court instructed the jury as follows: 1st. "If there was no provision in the contract that the towing of the flatboat should be at the plaintiffs' risk, then the defendants will be liable if the boat was sunk in consequence of the ordinary negligence of their servants or employees. You will not consider any evidence of any notice that boats would be towed by the defendants only at the risk of the owner of the tow, unless the contract was made subject to such condition. 2d. If the flatboat was too heavily loaded, and the defendants, knowing that fact, took her in tow, they were bound to use ordinary care with reference to the condition of the boat. If the overloading of the flat by the plaintiffs materially contributed to the loss they cannot recover, but if the defendants were guilty of negligence in towing the flat, and such negligence alone was the immediate cause of the loss, the defendants are liable."

*Held,* that the instructions correctly stated the law applicable to the case.

*Quære,* whether the defendants could have been charged as common carriers.

APPEAL from the *Jefferson* Circuit Court.

ELLIOTT, J.—This was a suit brought by *Scott* and *Chilton,* the appellees, against *Neal* and *Neal,* the appellants, to recover the value of a quantity of corn, gunny bags and a pair of scales, laden on a flatboat of the plaintiffs' and lost by the sinking of the flatboat while being towed from *Roberts* landing, *Kentucky,* to *Madison, Indiana,* on the *Ohio* river, by the defendants' steamboat, "*Sam B. Young.*"

The complaint contains three paragraphs. The first paragraph charges the defendants with the loss, in consequence of their negligence and unskillfulness as private carriers. The second charges them as common carriers. The third is substantially the same as the first, but alleges that the goods were laden on the plaintiffs' flatboat, and were lost by the defendants' carelessness and negligence in towing the same.

The defendants answered, *first,* by a general denial; *second,* alleging due care and skill in themselves, and that the loss was caused by the negligence, unskillfulness and want of care on the part of the plaintiffs, their agents and

servants, and in consequence of defects in their said flat-boat, and the overloading of the same; *third,* substantially the same as the second, with the additional allegation that they had given notice to the plaintiffs that all towing was done at the risk of the owners of the tow. The court, on the plaintiffs' motion, struck out the second and third paragraphs of the answer, and the defendants then, on leave of the court, amended and re-filed the third paragraph. As amended, it alleges that, by agreement between the parties, the said flatboat was towed at the risk of the plaintiffs. Replication in denial of the third paragraph. The trial of the issues by a jury resulted in a verdict for the plaintiffs for the sum of $1,347 48. The court overruled a motion for a new trial made by the defendants, and rendered judgment on the finding of the jury. The defendants appeal.

It is proper here to state that the Circuit Court held that the defendants, in towing the flatboat, were not liable in their capacity of common carriers, but were only liable for losses resulting from a failure to exercise ordinary care in towing the flatboat as private carriers, or bailees for hire.

The first error assigned is, that the Circuit Court erred in sustaining the plaintiffs' motion to strike out the second and third paragraphs of the defendants' answer.

As to the third paragraph, the defendants amended and re-filed it. It was then retained in the record. Having thus amended it, they cannot complain of the action of the court; besides, no exception was taken at the time to the ruling of the court in striking out the third paragraph.

The second paragraph was stricken out because it only amounted to a general denial. We think there was no error in striking it from the record. The general denial was filed and remained of record. The plaintiffs sought to make the defendants liable for the loss on the ground that it was occasioned by their culpable negligence, or the want of ordinary care in towing the flatboat. These were material allegations, and the *onus* of proving them was on the plaintiffs. They necessarily involved the whole question of the cause

of the loss. The second paragraph of the answer denied that the loss occurred by the negligence of the defendants or their servants or agents, and asserted that it was occasioned alone by overloading the boat, and by the carelessness and fault of the plaintiffs and their agents. It was not an answer in confession and avoidance; it set up no affirmative defense, and was simply a denial, partly argumentative, of the facts alleged in the complaint, and was properly stricken ·from the record.

Before the commencement of the trial the court, on motion of the plaintiffs, suppressed certain statements in depositions taken by the defendants. This is also assigned as error. *John S. Neal*, one of the defendants, who testified to a conversation between a Mr. *Irwin* and himself in reference to the loss of the property in controversy, was interrogated as follows: "How came Mr. *Irwin* to make any communication to you about it?" In answer to which the witness, among others, made this statement, viz: "He seemed to be acting as the owner of the flatboat and corn. He met me on the street three or four days after the flatboat was reported to have been sunk, and asked me what we were going to do about settling for the lost corn. I told him that we had nothing to do with it. I said, you are aware that the boat does all her towing at the risk of the owners of the tow." The court suppressed the statement. The appellants' counsel, in their brief, state that *Irwin's* reply, that "he was aware of that, but that he believed the flatboat was lost by the negligence of the crew," was also suppressed, but it is not ʼso stated in the bill of exceptions, and this latter statement was included in the evidence given to the jury. We think there was no error in suppressing the statement. It is not claimed that *Irwin* was the owner of either the flatboat or the corn, nor was he the agent of the plaintiffs in procuring the boat to be towed. The evidence shows that the contract for towing the flatboat was made by *R. E. Neal*, one of the defendants, with *Preston King*, the agent of the plaintiffs, both of whom testified to that

fact.   They agreed, too, in the statement that the terms of the contract were that the defendants were to tow the flatboat to *Madison* for $15, and that there was nothing said between them about the towing being at the risk of the owners of the flatboat.   The statement suppressed was irrelevant, and its suppression could not have injured the defendants.   Two other statements were stricken from the same deposition, and correctly, we think, because they were merely 'hear say,' and not facts known to the witness.

*Charles Miller*, whose deposition was also taken and filed by the defendants, was asked to state " whether or not there was any notice posted on the steamer *'Sam Young*,' prior to the 31st of *December*, 1864, in respect to towing, and if there was, to state when and where it was posted up, and furnish such notice, or a copy, if you can?"   To which he answered: "There was a notice posted on the boat.   I cannot tell when, it was along about *June*, I think.   We usually kept it hanging in the hall or front of the office.   I cannot furnish the notice or a copy without going to the boat."   The witness was then asked to "state the terms of the notice," to which he answered as follows: "All towing done by the *Madison* and *Louisville* packets at the risk of the owner.   I am not sure that the name of the boat was on that notice.   It was a written notice."   The court suppressed this latter question, and the answer thereto.   The appellants admit that parol evidence of the contents of the notice could only be given on the trial in the absence of the original, and after properly accounting for its absence, as that it was lost or destroyed; but, as these facts might be proved on the trial by other witnesses, and thus render parol evidence of the contents of the notice proper, it is insisted that the suppression of that portion of the deposition was premature.   In such case, if the evidence might become material and proper on the trial, it would be proper for the court to reserve the question, and determine it at the time the evidence is offered on the trial. But, although the court had suppressed that portion of the deposition, if it became proper and legitimate evidence in

the progress of the trial, it was still in the power of the court to admit it, and the record does not show that it either became material or proper, or that the defendants were in any way prejudiced by its suppression; besides, the witness afterward produced a copy of the notice, which was made a part of his deposition, and was thus given in evidence to the jury.

The remaining questions presented in the case arise upon the instructions given by the court to the jury. The court, on its own motion, instructed the jury, *inter alia*, as follows: "If you find there was no provision in the contract for the towing of the flatboat at the plaintiffs' risk, then the defendants would be liable if the flatboat was sunk in consequence of the ordinary negligence of their servants or employees, otherwise not. Ordinary negligence is the want of that care which men of ordinary prudence usually employ. You will not consider any evidence of any notice that boats would be towed by the '*Sam Young*' only at the risk of the owners of the tow, unless the contract for the towing of the flat was made subject to the conditions of such notice." The appellants object to the latter clause of this instruction, in connection with the rulings of the court in suppressing parts of the defendants' depositions, to which we have already referred, and claim that the court thereby excluded from the jury all the evidence showing, or tending to show, that the appellants gave public notice that they towed only at the risk of the owners of the tow, and tending to charge the appellees with actual notice of the same, and that they contracted with reference to it. We have heretofore shown that evidence of such a notice having been, at one time, posted on the "*Sam Young*" was given to the jury, and we do not find from the record that the court suppressed any part of the depositions or excluded from the jury any evidence, except certain 'hear say' statements, tending to prove such a notice, or a knowledge thereof by the plaintiffs or their agent who made the contract.

It appears, indeed, from the evidence that such a notice had been posted up in the boat in *June*, 1864; that the boat was repaired in *November* following, and during the repairing the notice was lost or mislaid, and no such notice was afterward posted in the boat. Such seems to be the preponderance of the evidence on that point, while it is clear that no such condition was made or referred to when the contract for towing the flatboat was made. We think the instruction was correct, and see nothing in the action of the court in giving it, or in suppressing portions of the depositions, of which the defendants can rightfully complain.

The court, at the request of the plaintiffs, gave to the jury the following instructions, viz: 5. "If the jury find that the defendants agreed with the plaintiffs or their agents to tow the flatboat named in the complaint to *Madison*, *Indiana*, for $15, they were bound to use ordinary diligence, care and skill in fastening said flatboat to the steam boat, and in towing the same to *Madison*. If they did not do so, and you find that loss occurred thereby, the defendants are liable for the damages.

10. "If the jury believe from the evidence that the defendants took said flatboat, laden with the corn, &c., of the plaintiffs in tow, as charged in the complaint, on a contract that they would tow the same to the landing at *Madison*, for a price agreed upon by the parties, and the same was so taken by the defendants with a full knowledge of the way the flat was loaded, the defendants are liable for the want of due care in towing said boat, notwithstanding the plaintiffs had a servant in charge of said flatboat at the time it was delivered to the defendants to be towed; but the fact that the plaintiffs had a servant on the boat must be considered by you as a circumstance, with all other evidence in the case, as to whether or not the flat was sunk by the want of ordinary care on the part of the defendants."

11. "If the jury believe from the evidence that the flatboat was too heavily loaded, and that the defendants took it in tow for a reward, as stated in the complaint, knowing

how it was loaded, they were bound to use ordinary care in towing, with reference to the condition of the boat. And if you believe from the evidence that ordinary prudence required greater care in towing the boat as loaded, than one loaded less heavily would have required, then the defendants were bound to use greater care, to amount to ordinary care in this case, than in the case supposed. In other words, ordinary care in each case must depend upon the kind and condition of the boat and property taken in tow. It is for you to determine, from all the circumstances, whether the flat was sunk and the cargo destroyed for the want of ordinary diligence on the part of the defendants, their servants or agents."

These instructions were all excepted to by the defendants, but in their brief counsel base their exception and argument mainly upon the last instruction. The principle asserted by the court in the instructions is, that the defendants were bound to use ordinary diligence and skill in fastening the flatboat to the steamboat, and in towing the same, and if the flatboat was loaded too heavily, and the defendants knew that fact, they were required to use ordinary care and skill with reference to the actual condition of the flatboat at the time.

The objection urged to the instructions is that they hold the defendants liable for the loss, "notwithstanding the negligence and misconduct of the plaintiffs materially and directly contributed to the result." But this conclusion cannot fairly be drawn from the instructions. The only act of the plaintiffs, or their agents, which is urged by the defendants as having caused the loss, or as having contributed to it, is that the boat was too heavily loaded; a question of fact earnestly contested on the trial, and in reference to which the evidence is conflicting. But the evidence clearly tends to prove that the agents of the defendants, before they fastened to the flatboat, knew how it was loaded, and expressed the belief that it was loaded too heavily.

In *Wright* v. *Gaff*, 6 Ind., 416, which was a suit against the captain of a steamboat for negligently towing a flatboat loaded with corn, whereby loss accrued, the evidence at least tended to prove that the flatboat was loaded too heavily at the stern in proportion to the loading at the bow, by reason of which she sank too deeply at the stern. The loss, however, was charged to have resulted from carelessness in running the steamboat at too great a speed. It was contended that the unskillfulness of the plaintiffs in not properly loading the flatboat contributed to the loss, and that the plaintiffs could not, therefore, recover. The court say: "Conceding that the flatboat was not skillfully loaded, still that fact contributed but remotely to the result that occurred. The owners of the flatboat were guilty of no negligence after the steamer took it in charge; all the carelessness immediately connected with the loss was upon the part of the steamer. It cannot be shown that in the absence of that carelessness the loss would have happened, and the steamer cannot escape from responsibility for her own wrongful acts upon a conjecture that the like consequences might have happened without them. The immediate cause of the loss was the wrongful act of the steamer, and for it she must be liable unless other facts in the case will exempt her." See, also, *Wright et al.* v. *Brown*, 4 Ind., 95.

The following instructions on the same subject were given by the court to the jury, at the request of the defendants, viz:

2. "If you believe from the evidence that the flat was overloaded by the plaintiffs or their agents, and that, but for such overloading, it would have towed safely in the manner adopted by the defendants, their agents and servants, and that it was sunk in consequence of such overloading, and not for want of ordinary care on the part of the defendants or their servants, you should find for the defendants.

3. "If you believe from the evidence that the flatboat was overloaded by the plaintiffs, and that that fact mate-

rially contributed to the loss of the cargo of the flatboat, you should find for the defendants, unless you are also of the opinion that the defendants were guilty of negligence in respect to the towing of said boat, and that it was their negligence alone which was the immediate cause of the loss.

3. "To entitle the plaintiffs to recover, you must be satisfied that the alleged loss was the result of the negligence of the defendants, their agents or servants, in the omission of some act which, as men of ordinary prudence in that business, they should have done, or in the doing of some act they should not have done, and that it was not the result of any act of the plaintiffs, and that no act of the plaintiffs contributed to the loss."

The plaintiffs contended that the loss occurred from the improper manner in which the defendants had attached or fastened the flatboat to the steamboat, and from their neglect to put out a spar, or stage plank, to keep the flatboat from floating under the guards and against the body of the steamboat, and not from overloading. The evidence was conflicting. It was the province of the jury to determine the questions of fact. They were fairly submitted to them under the instructions of the court, which were certainly not unfavorable to the defendants, and we find nothing in the record to justify us in disturbing the finding of the jury.

The appellees assign cross-errors upon the rulings of the court in overruling a demurrer to the third paragraph of the answer, and in refusing certain instructions to the jury asked by them. These rulings raise the question whether the defendants, in towing the flatboat, were common carriers, and liable as insurers under the law governing that relation. The question is an interesting and important one, especially to the owners and masters of steamboats on our western waters, as well as to those who have occasion to employ them in that way. The authorities in reference to it are conflicting, and the question cannot be regarded as definitely settled. See *Wright* v. *Gaff, et al.,*

*supra,* and the authorities there referred to. In the case before us, the question is rendered wholly immaterial, as the plaintiffs recovery would not be increased by the application of the law governing common carriers, and we do not, therefore, deem it necessary to examine or decide the question.

The judgment is affirmed, with three per cent. damages and costs.

*C. E. Walker* and *A. D. Matthews,* for appellants.

*H. W. Harrington* and *J. Sullivan,* for appellees.