Krenzer, by Next Friend, v. The Pittsburg, etc., R. W. Co.

KRENZER, BY NEXT FRIEND, v. THE PITTSBURG, CIN-
CINNATI, CHICAGO AND ST. LOUIS RAIL-
WAY COMPANY.

[No. 17,654. Filed April 15, 1896. Rehearing denied Dec. 16, 1898.]

TRESPASS.—*Railroad and Highway Crossings.—Child Playing Upon Track.*—A child playing upon a railroad and highway crossing is not a trespasser. *pp. 590, 591.*

RAILROADS.—*Contributory Negligence of Child on Track.—Conflict of General Verdict with Answers to Interrogatories.*—Special findings, by way of answers to interrogatories propounded to the jury, that plaintiff, a boy seven and one-half years old, went to sleep upon a railroad track at a highway crossing; that plaintiff was a child of usual and ordinary intelligence and physical strength and activity for his age; that he knew that trains were run on such track, and that if he remained upon the track he was liable to be run over and injured, show contributory negligence so conclusively that the special findings will prevail over a general verdict for plaintiff. *pp. 587-597.*

From the Hamilton Circuit Court. *Affirmed.*

*A. G. Smith, C. A. Korbly, Beckett & Doan* and *Christian & Christian,* for appellant.

*Samuel O. Pickens,* for appellee.

HOWARD, J.—This was an action for personal injuries, brought by appellant against appellee. The jury found for appellant in the sum of $4,000, and with their verdict returned answers to certain interrogatories. On motion of appellee, the court gave judgment against appellant, upon the answers to interrogatories, notwithstanding the general verdict in his favor. The complaint was in three paragraphs. The material allegations were: That the appellee company was operating one of its locomotives upon and over one of the tracks of the Union Railway Company, known as the "Belt Railroad," within the city of Indianapolis, near the intersection of said track with the

Lake Erie and Western Railroad; that said track had, for twenty years or more, been used by pedestrians to pass back and forth upon, with the knowledge, acquiescence, consent, and permission of the Union Railway Company and of appellee; that near said point was an open common, on either side of the Belt track, whither children were attracted in large numbers by the green grass and cool shade during the summer months, using the same for a playground, and passing upon and over said Belt track at that point with the knowledge of appellee and of said Union Company; that there was no fence or other obstruction to keep children off said track, and no watchman or other person, or notice, or warning, to prevent children or other persons from going upon said track, or walking on the same; that appellee used said Belt track daily for the transportation of its cars and locomotives, and had so used the same for more than twenty years; that the appellant, a boy seven years old being too young to appreciate the danger, or have proper discretion in the matter, and without proper sense to appreciate the danger, without the knowledge of his parents, and without fault upon his part, and without negligence of his parents, came upon said track at a point where the same is crossed by a public highway of said city, and while within said public highway, and in plain view of the appellee, there being nothing to obstruct the view of appellee's employes in charge of the locomotive, or to prevent them from seeing the appellant for a distance of 300 feet, appellee negligently ran its locomotive against, on to, and over said appellant, crushing and mangling his right foot and leg; that there was then in force an ordinance of the city of Indianapolis making it unlawful to run an engine at a higher rate of speed than four miles an

hour along any track in said city, and requiring the bell on the locomotive to be rung when moving in or through said city; that, at the time of this injury to appellant, the locomotive was moving at a very high rate of speed, fifty miles an hour, and the bell was not ringing, and no signal of danger was given; that appellee's employes in charge of the locomotive could have seen appellant upon the track in time to stop the locomotive and prevent the injury, but that they negligently failed to look and observe the track ahead of the locomotive, and negligently ran upon and over the leg of appellant.

Counsel for appellee admit that the general verdict for the appellant was a finding of all the material facts stated in the complaint. Appellee's negligence and appellant's freedom from contributory negligence must therefore be taken as established, unless the answers to the interrogatories are found to be in irreconcilable conflict with the general verdict. The answers to interrogatories show that, at the time of the accident, the appellant was seven and one-half years of age; that he was a boy of usual and ordinary intelligence, and of average physical strength and activity, for his age; that he knew that the track, at the place in question, was used to run cars and engines over, and had sufficient intelligence to know that engines and cars were liable to pass over the track, and that, if he remained on the track and an engine or car passed over it, he would be run over and injured; that, just before the injury, he was out upon the track, playing jackstones; that he sat upon the rail of the track with his feet between the rails, and while so sitting fell asleep; that, when the engine struck him, he was lying with one leg over the rail and his body outside; that the locality where he was hurt was at the cross-

ing of a public highway; that the time was between seven and eight o'clock in the evening (July 12, 1892), it being still daylight; that neither the engineer nor the fireman, nor any one else on the engine, saw him before he was run over; that the engine was at the time running forward at the rate of ten miles per hour, and the bell was not ringing; that the engineer was looking out ahead, but the fireman was not.

Counsel for appellee, in seeking to uphold the judgment, upon the interrogatories, notwithstanding the general verdict, bases his defense of the court's action upon the contention that the appellant, at the time of his injury, was a trespasser upon appellee's right of way. We are inclined to think this contention is untenable. The accident occurred in the public highway. There the appellant had the same rights as the appellee. His right upon the common crossing was equal to that of the appellee, with the sole exception that, when both approached the crossing, appellee had the prior right of passage with its cars. Appellant might walk or drive or play upon the highway, just as he pleased, provided only, he did not obstruct the passage of others desiring to travel along the same road. The time is not yet come when American boys will be considered as trespassers merely because they go to play upon the streets or public commons. This is particularly true where, as in the present case, the population is dense, and the children have nowhere else to play, except in close rooms or scanty yards. There may be negligence in going upon the highway, whether to walk, or drive, or play, and whether the person be an adult or a child, but there is no trespass. One who goes upon the highway must guard against injury to himself, occasioned with or without the fault of others, who have an equal right to be upon the same highway. He will not, however, be a trespasser,

even if a boy, and playing jackstones on the highway. See the well considered case of *Louisville, etc., R. W. Co.* v. *Sears*, 11 Ind. App. 654, and cases cited, at p. 670. In *City of Indianapolis* v. *Emmelman*, 108 Ind. 530, one of the cases cited, a child five years of age, playing in the street, fell into an unguarded pit. It was there said by Judge Mitchell: "It [the pit] was made in the bed of a shallow stream, and left alone unguarded on a July day, with knowledge that children were accustomed to play in the vicinity. The city must be held to know that children are attracted to such a place in July weather. They were not intruders." See, further, *McGuire* v. *Spence*, 91 N. Y. 303, at p. 306.

While, therefore, in the case at bar, the appellant and the other boys, his companions, had an undoubted right to go upon the street, and while the appellee was confessedly guilty of negligence in running its locomotive through the city at a speed forbidden by the ordinance, and without ringing the bell of the engine, as required by the ordinance, yet we are persuaded. from the answers to the interrogatories, that the appellant, notwithstanding his tender youth, was himself guilty of contributory negligence in sitting upon the rail of the track and lying down to sleep with his leg across the rail. We think he is shown to have had sufficient appreciation of the danger he thus incurred. He was seven and one-half years of age, and, as the jury find, was of ordinary intelligence and average strength and activity, for that age. Moreover, they find that he had sufficient intelligence to know that engines and cars were liable to pass over the rails where he sat, and that, if they did so pass along, he would be run over and injured. Had he been standing on the track when the locomotive was coming, he might have thought he could be quick enough

592    SUPREME COURT OF INDIANA,

Krenzer, by Next Friend, *v.* The Pittsburg, etc., R. W. Co.

to get off, or even to run clear across the track, before
he could be caught. That might be the natural re-
sult of boyish presumption and inexperience; and, if
he had been injured in such a case, we think the com-
pany, owing to its own negligence, would have been
liable. But to sit upon the track to play, and to lie
down there to sleep, with one leg over the rail, seems
such a reckless and foolhardy act, that, as we think,
a boy found to have sufficient intelligence to compre-
hend the danger must be held culpable for incurring
it. We are consequently of opinion that the court
was justified, from the answers of the jury to the in-
terrogatories submitted to them, in holding that ap-
pellant was guilty of negligence contributing to his
own injury. The judgment is affirmed.

McCabe, J., dissents.

## ON PETITION FOR REHEARING.

HOWARD, J.—We have given careful consideration
to the learned argument of counsel in support of the
petition for a rehearing. Nothing said, however, has
been sufficient to convince us that the rule heretofore
enforced by this court in relation to contributory neg-
ligence in injury cases should not be maintained.
There is no doubt, and never has been, that, if a per-
son is injured by the act of another, the injured per-
son will thereby have a right of action for damages,
even though he was himself not free from fault, pro-
vided only the person injuring him knew of his con-
dition, and could, with ordinary care, have avoided
the injury complained of. In the recent case of *Lake
Erie, etc., R. R. Co.* v. *Stick,* 143 Ind. 449, it was said,
citing *Louisville, etc., R. W. Co.* v. *Phillips,* 112 Ind. 59:
"If the employes see a man bound to the rails in time
to check the train, they must use reasonable measures
to check it, and not suffer it to run upon the helpless

man." This would be true, although the man had himself been wholly at fault, even so far as to have caused himself to be tied upon the track. So it is said in *Louisville, etc., R. R. Co.* v. *East Tennessee, etc., R. W. Co.*, 60 Fed. 993, cited by appellant: "If, with a knowledge of what the plaintiff has done or is about to do, the defendant can, by ordinary care, avoid the injury likely to result therefrom, and does not, defendant's failure to avoid the injury is the last link in the chain of causes, and is, in law, the sole proximate cause. The conduct of plaintiff is not, then, a cause, but a condition of the situation with respect to which the defendant has to act. The principle is established by a long series of cases,"—citing *Davies* v. *Mann*, 10 Mees. & W. 546, and many other cases. The statement so cited with approval in appellant's brief is quite consistent with the rule established in this State. If, "with knowledge" of the plaintiff's condition, whether that condition has been brought about by plaintiff's fault or not, defendant can, by ordinary care, prevent the threatened injury, he must do so, or become liable for the injury.

We think that counsel are perhaps right in calling in question the propriety of an attempted distinction made by a *dictum* in *Pennsylvania Co.* v. *Sinclair*, 62 Ind. 301, 30 Am. Rep. 185, between what is there called the English doctrine, illustrated by the case of *Davies* v. *Mann, supra,* and the doctrine accepted in this State. We do not perceive any difference in principle between what are called the two doctrines, however difficult it may be to apply the accepted rules of the law of negligence to particular cases. In every case, one who has himself contributed to his own injury must suffer the consequences of his own want of due care, unless it should appear that the one injuring

him knew of his condition in time to have avoided the injury, and could with ordinary care have avoided it. To knowingly injure another, when, with ordinary care, such injury could be avoided, is not, however, mere negligence, but rather wilful wrongdoing, or, at least, such a wanton disregard of consequences as amounts to wilfulness. In some cases, we readily admit, it may be hard to draw the line between simple negligence on the one side and wilfulness or wantonness on the other. Carelessness may be so gross as scarcely to be distinguishable from wantonness, or from a willingness to do any act, no matter what the consequences. But, in principle, the injury suffered, if wrongful, must always be due either to a willingness to do wrong, or to a want of care to avoid such wrong. The act done is either positive or negative in its character; that is, either wilful or negligent. Contributory negligence is not a sufficient answer as to wilful wrongdoing, but it is as to simple negligence or want of ordinary care.

In the case before us, the injured boy, after playing upon the railroad crossing, sat upon the rail of the track and there fell asleep, and was hurt by the passing train. It was between seven and eight o'clock of a summer evening, though still daylight. The engineer was at the time looking out ahead, but neither he nor anyone else on the train saw the boy. It is not claimed that these facts show any wilful injury on the part of the employes of appellee, or any wanton disregard of plaintiff's rights, though it is admitted that the employes were negligent in running the train faster than allowed by ordinance, and without ringing the bell or sounding the whistle. Here, then, is a case where the injured person was himself guilty of negligence contributing to his injury, and where the persons injuring him did not see him, although the

engineer was looking out ahead, and did not, of course, know of his condition. Under these circumstances, even accepting the authority of the cases cited by appellant, there could be no recovery. No wilful or even wanton injury is shown, and the contributory negligence of appellant is undoubted. In a note to *East Tennessee, etc., R. R. Co.* v. *Humphreys*, 12 Lea 200, 15 Am. & Eng. R. R. Cas., at p. 472, the rule in cases of this kind is, as we think, well stated. It is there said: "The act of falling asleep or being drunk and incapable upon a railroad track is generally held to be such contributory negligence as will preclude recovery in case of accident," citing many cases, and adding: "It is of course to be understood that when the servants of the company fail to exercise due care after becoming aware of the plaintiff's dangerous position, the company is liable notwithstanding plaintiff's contributory negligence." See, further, *Lafayette, etc., R. R. Co.* v. *Huffman*, 28 Ind. 287; *Wright* v. *Brown*, 4 Ind. 95, 58 Am. Dec. 622; *Summit Coal Co.* v. *Shaw*, 16 Ind. App. 9; *Jeffersonville, etc., R. R. Co.* v. *Adams*, 43 Ind. 402; *Conner* v. *Citizens Street R. R. Co.*, 146 Ind. 430; Elliott Railroads, sections 1251, 1257.

But it is said that as the injured party in this case was at the time but seven and one-half years of age, and as a general verdict was returned in his favor, it follows conclusively that all the facts necessary to entitle him to judgment, including the fact as to his having sufficient capacity to comprehend and realize the danger incurred by him in sitting down to play upon the railroad track, were found for him by the jury, unless it should appear from answers to interrogatories that facts specially found were in irreconcilable conflict with such general verdict. There is no question that this is the law. It is, however, shown in the original opinion that such irreconcilable facts as to the

capacity of the injured boy were found by the jury. The jury found specially that the boy was seven and one-half years old; that he was "of usual and ordinary intelligence and judgment for his age," and "of ordinary physical strength and activity for his age;" that he knew "that the track at the place where the accident happened was used to run cars and engines over;" that, just before he was hurt, he was playing jackstones upon the track, and sat "down upon the rail of the track with his feet between the rails," and that "while sitting there in that position he fell asleep and remained asleep until he was hurt;" that, when the engine struck him, he was "lying with one leg over the rail, body off north side of rail;" that "the plaintiff when he sat down upon the track had sufficient intelligence to know that the track was used to run cars over," and "that engines and cars were liable to pass over said track;" and that "at the time he sat down upon the track he had sufficient intelligence to know that if he remained on the track and an engine or car passed over it he would be run over and injured." The capacity of the appellant to comprehend the danger thus incurred by him, as so found by the jury, cannot be distinguished from the capacity of an adult in the same circumstances which would make such adult chargeable with contributory negligence. We think it absolutely clear that the negligent conduct of the appellant, and his full appreciation of the possible consequences of such conduct, as found by the jury, must make him, as well as any other person, chargeable with negligence contributing to his injury. There is therefore no room here for the application of the rule laid down in *Cincinnati, etc., R. W. Co.* v. *Grames*, 136 Ind. 39, and like cases,— that, where it is uncertain whether the primary facts found show negligence, the jury are permitted and

Krenzer, by Next Friend, *v.* The Pittsburg, etc., R. W. Co.

required to find as an ultimate fact whether the plaintiff has or has not exercised such care as an ordinarily prudent person would have exercised under the circumstances. The facts here found by the jury disclose beyond question that the appellant was guilty of conduct showing him to be chargeable with negligence contributing to his own injury, and that he was at the time possessed of sufficient intelligence to know and appreciate the danger thus incurred by him.

Neither can it be that the company could be liable under the circumstances, as for wilful wrongdoing, unless, indeed, those in charge of the train knew that the boy was upon the track. But here, again, the jury find expressly that the engineer was "looking out ahead of the engine at and before the time plaintiff was run over;" and also that neither "the engineer nor fireman nor anyone on the engine saw the plaintiff before he was run over." There was therefore no wilful or wanton injury. Indeed, none is alleged in the complaint. But, as already said, in order to charge the company with responsibility, there must have been either wilfulness or wantonness on its part, or else negligence; and in the latter case the plaintiff must himself have been free from contributory negligence, which, as we have also seen, was not the case. Under any possible view, therefore, the appellant could not recover. Petition overruled.

### DISSENTING OPINION.

McCABE, J.—After a careful and painstaking examination of the questions presented on the petition for a rehearing in this case, I find myself wholly unable to agree with the majority of the court in holding that the petition for a rehearing ought to be overruled. I concur in that part of the original opinion holding that the appellee railroad company was guilty of neg-

Krenzer, by Next Friend, *v.* The Pittsburg, etc., R. W. Co.

ligence in running its engines at the time and place it ran over appellant's leg, and inflicted the injuries complained of, and I also concur in the original opinion in holding that appellant at the time and place, being at and on a highway crossing of the railroad track, was not a trespasser. But I do think this court erred in the original opinion in holding that the appellant was guilty of such contributory negligence as defeated his right of recovery.

The general verdict in favor of appellant is a finding of every material fact averred in his complaint. Among such material averments were the allegations of defendant's negligence, and the plaintiff's freedom from fault or contributory negligence. *Ohio, etc., R. W. Co.* v. *Trowbridge*, 126 Ind. 391-393; *Rogers* v. *Leyden*, 127 Ind. 50-59; *Town of Poseyville* v. *Lewis*, 126 Ind. 80-81. Now, unless the answers to the interrogatories are in irreconcilable conflict with this general verdict, that plaintiff was free from contributory negligence, the general verdict must stand; that is, if any supposable state of the evidence would or could show that the answers to the interrogatories could be true, and the general finding that appellant was free from contributory negligence was also true, then the general verdict must stand. *Ohio, etc., R. W. Co.* v. *Trowbridge, supra; Toledo, etc., R. R. Co.* v. *Adams*, 131 Ind. 38–40; *Town of Poseyville* v. *Lewis, supra; Rogers* v. *Leyden, supra; Western Assurance Co.* v. *Studebaker, etc., Co.*, 124 Ind. 176–179; *Allemong* v. *Simmons*, 124 Ind. 199–204.

There are two principal reasons, why, in my opinion, the answers to the interrogatories do not conflict with the finding in the general verdict that the plaintiff was free from contributory negligence. The first of those reasons is that the answers to the interrogatories show that the plaintiff was a boy of only seven

and one-half years of age, and fails to show such additional facts as would make him responsible for contributory negligence on account of his acts shown, which would in case of an adult amount to contributory negligence. These answers further show that he was a boy of usual and ordinary intelligence, and of average physical strength and activity for his age; that he knew that the track at the place in question was used to run cars and engines over, and had sufficient intelligence to know that engines and cars were liable to pass over the track, and that if he remained on the track, and an engine or car passed over it, he would be run over and injured; that just before the injury, he was upon the track at the highway crossing, playing jackstones; that he sat upon the rail of the track with his feet between the rails, and while so sitting, fell asleep; that when the engine struck him, he was lying with one leg over the rail and his body outside; that the time was between seven and eight o'clock in the evening of July 12, 1892, it being still daylight. While these facts show that the boy was of usual and ordinary intelligence for one of his age, it does not show what that degree of intelligence was. That was a matter of fact, and not a matter of law, because the law fixes no average or ordinary intelligence to be possessed by all boys of seven and one-half years of age, or any other age. He may have had knowledge that engines and cars were liable to run over the track, and, if they did so while he was on the same, he would be run over and injured. But that is certainly a different thing from the possession of prudence and the power to appreciate and realize the seriousness of the danger he incurred.

In the case of the *City of Pekin* v. *McMahon*, 154 Ill., at page 154, 39 N. E. 487, the supreme court of Illinois said: "Whether, as matter of law, a child

seven years old or under that age, can be justly held to be incapable of negligence, it is not necessary to decide. But where a child has passed the age of seven years, as was the case with appellee's deceased intestate, we are of the opinion that he is bound to use such care as children of his age, capacity, and intelligence are capable of exercising, and that the question whether he has done so or not should be submitted to the jury." The court cites, in support of the foregoing proposition, authorities to the same effect, as follows: *Chicago, etc., R. W. Co.* v. *Wilcox*, 138 Ill. 370, 27 N. E. 899; 2 Thompson on Neg., pages 1181, 1182; *Railroad Co.* v. *Stout*, 17 Wall. 657; *Birge* v. *Gardner*, 19 Conn. 507; *Daley* v. *Norwich, etc., R. R. Co.*, 26 Conn. 591; *Union Stock Yards, etc., Co.* v. *Rourke*, 10 Bradw. 474; *Evansich* v. *G. C. & S. F. R. W. Co.*, 57 Tex. 123; *Kansas, etc., R. W. Co.* v. *Fitzsimmons*, 22 Kan. 686. The following cases are also to the same effect that the question whether a person of tender years, seven or eight years of age, has or has not been guilty of contributory negligence by failing to exercise ordinary care, is a question of fact, which must be determined by the jury. *New York, etc., R. R. Co.* v. *Perriguey*, 138 Ind. 414; *Mangam* v. *Brooklyn R. R. Co.*, 38 N. Y. 455; *Detroit, etc., R. R. Co.* v. *Van Steinburg*, 17 Mich. 99; *Stone* v. *Dry Dock, etc., R. R. Co.*, 115 N. Y. 104, 21 N. E. 712; *Chicago, etc., R. R. Co.* v. *Grablin*, 38 Neb. 90, 56 N. W. 796; *Huff* v *Ames*, 16 Neb. 139, 19 N. W. 623; *Avey* v. *Galveston, etc., R. W. Co.*, 81 Tex. 243, 16 S. W. 1015; *Schmitz* v. *St. Louis, etc., R. W. Co.*, 119 Mo. 256, 24 S. W. 472; *Cent. R. R., etc., Co.* v. *Rylee*, 87 Ga. 491, 13 S. E. 584; *Western, etc., R. R. Co.* v. *Young*, 81 Ga. 397, 7 S. E. 912; *Moynehan* v. *Whidden*, 143 Mass. 287, 9 N. E. 645; *Rosenberg* v. *Durfee*, 87 Cal. 545, 26 Pac. 793; *Springfield, etc., R.*

*W. Co.* v. *Welch,* 155 Ill. 511, 40 N. E. 1034; *Pierce* v. *Conners,* 20 Colo. 178, 37 Pac. 721; *McGuire* v. *Chicago, etc., R. W. Co.,* 37 Fed. 54; *Swift* v. *Staten Island, etc., R. R. Co.,* 123 N. Y. 645, 25 N. E. 378; *Baker* v. *Flint, etc., R. R. Co.,* 68 Mich. 90, 35 N. W. 836; *Bostwick* v. *Minneapolis, etc., R. W. Co.,* 2 N. D. 440, 51 N. W. 781; *Atwood* v. *Bangor, etc., R. W. Co.,* 91 Me. 399, 40 Atl. 67; *Baltimore, etc., R. W. Co.* v. *Cooney,* (Md.) 39 Atl. 859; *Adams* v. *Southern R. W. Co.,* 84 Fed. 596; *Louisville, etc., R. R. Co.* v. *Morlay,* 86 Fed. 240; *Satinsky* v. *Mist Brewing Co.* (Pa.), 40 Atl. 821. As said in the latter case, one for a negligent injury to a boy seven and one-quarter years of age: "When we have considered them all (answers to interrogatories), I do not think the case was one wherein the court should have directed the verdict. It was still left for the jury to say, under proper instructions from the court, whether or not the evidence satisfied them that this lad had such judgment and such comprehension as enabled him to appreciate the danger and subject him to the consequences of negligence if he failed to use his reason and sense to avoid it. This question I think clearly remained for the jury to pass upon."

The jury passed upon the question of the child's negligence in the case now under consideration in their general verdict, finding, as we must presume from the evidence, that the boy's prudence and discretion, his appreciation and apprehension of danger, were not, in the estimation of the jury, sufficiently matured to enable him to exercise judgment discreetly, so as to subject him to the consequences of negligence. At all events, the answers to the interrogatories fail to show that his acts which endangered him, under all the circumstances of his tender age, discretion, power of reflection, forethought, and judg-

ment amounted to negligence, and hence such answers are not inconsistent with the general verdict finding him free from contributory negligence. This case, by the authorities above cited (and I know of none to the contrary), belongs to the class of cases where the question of negligence or no negligence becomes a question of fact to be passed on and determined by the jury, and not a conclusion of law to be drawn from the facts found by the jury; because the question whether a child seven and one-half years of age has sufficient experience, discretion, and judgment, power of forethought and reflection, to enable it to adequately appreciate danger, so as to enable it to exercise caution and prudence in guarding against such danger, is a question upon which one sensible impartial man might infer, that such child had a sufficiently matured mind and judgment to make it responsible for failure to exercise due care for its own safety, and that due care had not been exercised by it, while another man equally impartial might infer that the child had not sufficient capacity to make it responsible for failure to exercise such care. In that class of cases, this court, by a long line of decisions, has established that the jury must find whether, under all the facts and circumstances found by them, the party whose acts are in question was guilty of negligence or not, as a question of fact. *Ohio, etc., R. W. Co.* v. *Collarn,* 73 Ind. 261, 38 Am. Rep. 134; *Woolery* v. *Louisville, etc., R. R. Co.,* 107 Ind. 381; *Smith* v. *Wabash R. R. Co.,* 141 Ind. 92; *Cleveland, etc., R. W. Co.* v. *Harrington,* 131 Ind. 426; *Shoner* v. *Pennsylvania Co.,* 130 Ind. 170; *W. C. De Pauw Co.* v. *Stubblefield,* 132 Ind. 182; *Faris* v. *Hoberg,* 134 Ind. 273; *Cincinnati, etc., R. W. Co.* v. *Grames,* 136 Ind. 39; *Cleveland, etc., R. W. Co.* v. *Moneyhun,* 146 Ind. 147, 34 L. R. A. 141. The jury

in the answers to interrogatories, wholly fail to find or show, as a question of fact, whether the plaintiff was or was not guilty of contributory negligence. This court, in the original opinion, drew the inference, from the facts shown by the answers to the interrogatories, that the child had been guilty of contributory negligence, thereby affirming the action of the trial court in drawing such inference. But it was the province of the jury to draw that inference, in the absence of which their general verdict cannot be overthrown by the answers to the interrogatories. The second reason why the answers to the interrogatories do not conflict with the general verdict as to appellant's freedom from contributory negligence is that, even though the child be held responsible and guilty of negligence in falling asleep upon the railroad track with one leg across the rail, yet that negligence is shown by the findings of the jury to have been antecedent and prior to the established negligence of appellee's engineer. For 300 feet before reaching the child thus sleeping on the track, the engineer had a clear, unobstructed view of the child's situation and peril, and, as the findings show, could, by the exercise of ordinary care, have avoided running his engine over and crushing his leg. That being the case, the plaintiff's negligence was not proximate, and not a proximate cause of his injury, and did not proximately contribute thereto, according to the long-established legal principles both in this country and in England. The definition of "contributory negligence" is given in an article on that subject in 4 Am. & Eng. Ency. of Law, 17; see same in 7 Am. & Eng. Ency. of Law, (2d ed.), pp. 371-382, thus: "Contributory negligence is a want of ordinary care upon the part of a person injured by the actionable negligence of another, combining and concurring with that negligence, and contributing to the injury as a

proximate cause thereof, without which the injury would not have occurred." The same definition is given by Shearman & Redfield on Neg., section 61; Beach on Contributory Neg., section 7; Wharton Neg., sections 300, 323. The number of adjudicated cases affirming the same definition is so great that their citation would needlessly extend this opinion. That same article goes on to apply the definition of contributory negligence as follows: "In the application of the principle that the law looks at the proximate, and not the remote, cause of an injury, lies the great difficulty in the law of contributory negligence. No general rule for determining when causes are proximate, and when remote, has yet been formulated. But the principles that govern the determination of the question are well settled. When it is once established that a person, injured by the negligence of another, has been guilty of a want of ordinary care, it becomes necessary to determine whether such want of ordinary care proximately contributed to the injury, as an efficient cause, or only remotely as a condition or remote cause thereof. If it proximately contributed, there can be no recovery; but if it was only a remote cause or condition of the injury, a recovery can be had. A want of ordinary care may be said to contribute proximately to an injury when it is an active and efficient cause of the injury in any degree, however slight, and not the mere condition or occasion of it. But it is not a proximate cause of the injury when the negligence of the person inflicting it is a more immediate efficient cause. That is, when the negligence of the person inflicting the injury is subsequent to, and independent of, the carelessness of the person injured, and   *   *   *   the person inflicting the injury, would have discovered the carelessness of the person injured in time to have avoided its effects, and

prevented injuring him, there is no contributory negligence, because the fault of the injured party becomes remote in the chain of causation. In such a case, the want of ordinary care on the part of the injured person is held not a juridical cause of his injury, but only a condition of its occurrence." 4 Am. & Eng. Ency. of Law, 25, 26, 27, and numerous cases there cited. Wharton on Negligence, sections 323, 324 and 325, states the rule substantially the same, and, at the conclusion of the latter section, uses the following language: "And no matter how negligent I may have been in putting myself in a particular position, I can recover for injuries inflicted on me by a party who could have avoided injuring me by the exercise of the ordinary care which, as has been just stated, is usual with prudent persons under the circumstances." Shearman & Redfield on Neg. states the rule substantially the same in sections 61 and 99. To the same effect is Beach on Contributory Neg., section 34, and cases there cited.

It will be difficult, if not impossible, to find any adjudicated case either in this country or England holding to a contrary doctrine; and the cases affirming the rule as above stated are so numerous that a citation of them would serve no useful purpose. *Isbell* v. *New York, etc., R. R. Co.*, 27 Conn. 393, 71 Am. Dec. 78, is one of them. That was a suit by the plaintiff against the defendant to recover damages on account of the railroad company killing the plaintiff's cattle, which he had negligently permitted to stray onto the railroad. It is there said that: "The defendants place their defense on the doctrine of the books, that where a plaintiff seeks to recover for the negligence of a defendant, it must appear that the negligence of the plaintiff did not essentially contribute to the injury—a doctrine which has long been recognized

as a sound one here and elsewhere; * * *. But to this general doctrine there are important qualifications, and this case is claimed by the plaintiff to present one of them; or rather, in this and kindred cases, it is said, and we think correctly, that there is an important distinction to be observed, and that great injustice would be done by the indiscriminate application of the rule of law to which we have referred. * * * The plaintiff has not forfeited his cattle because they have strayed away, but may justly demand of the defendants to conduct as the circumstances at the moment require, doing no unnecessary injury to his property, and carrying out the spirit of the golden rule, which applied to a case like the present, is as good law as it is sound morality." Then the court quotes the celebrated donkey case of *Davies* v. *Mann*, 10 Mees. & W. 545. The Connecticut court then goes on: "The same is held in *Trow* v. *Vermont Central R. R. Co.*, 24 Vt. 494, 58 Am. Dec. 191. The court there say: 'Where the negligence of the defendant is proximate, and that of the plaintiff remote, the action can then well be sustained, although the plaintiff is not entirely without fault. This seems now to be settled in England and in this country. Therefore if there be negligence on the part of the plaintiff, yet, if at the time when the injury was committed, it might have been avoided by the defendant in the exercise of reasonable care and diligence, an action will lie for the injury. So in this case, if the plaintiff were guilty of negligence or even positive wrong in placing his horse in the highway, the defendants were bound to the exercise of reasonable care and diligence in the use of their road and management of their train and engine; and if the injury arose from a want of care they are liable.'" The same principle was applied in *Knowles* v. *Crampton*, 55 Conn. 336, 11 Atl. 593, a case

very much like the present. The plaintiff stopped her vehicle in the highway, and the defendant, coming up behind, and attempting to go around, caught the rim of the plaintiff's wheel with the hub of defendant's carriage, and tipped up the plaintiff's carriage, threw her out, and caused the injury sued for. A recovery was upheld on the ground that the contributory negligence was not proximate. *Hays* v. *Gainesville Street R. W. Co.*, 70 Tex. 602, 8 S. W. 491, 8 Am. St. 624, is another case of the same kind. The plaintiff, Hays, negligently got in front of the defendant's street car, which was being drawn by a mule; but the driver saw him in time to have stopped the car in time to have avoided injuring the plaintiff, but negligently failed to do so, and the plaintiff's foot was crushed. It is there said: "We are also of the opinion that the proposition announced in paragraph six, and repeated in paragraph seven, of the charge, to the effect that if plaintiff was guilty of contributory negligence he cannot recover unless the car driver wilfully or intentionally inflicted the injury upon him should not have been given except upon the theory that the driver failed to discover plaintiff's peril in time to avoid injuring him by the use of such means as a prudent and careful man would have employed under the same circumstances; for, if the driver could have thus avoided the injury after discovering plaintiff's peril, his want of ordinary care was the proximate cause of it, and defendant would be liable for damages. The reason why a person who, if guilty of contributory negligence contributing to his own injury, cannot recover is because the policy of the law will not ordinarily permit one to recover who is himself at fault; but although the negligence of such person may contribute to his own injury, yet if the person inflicting it discovers the peril of the other in time by the reasonable exer-

cise of the means at hand, to have prevented the in-
jury, the law considers the failure to use such means
as the immediate cause, and will permit a recovery,
notwithstanding the injured party was guilty of con-
tributory negligence." The same rule is recognized
and enforced in *Hurt* v. *St. Louis, etc., R. R. Co.*, 94
Mo. 255, 7 S. W. 1, 4 Am. St. 374; *Troy* v. *Cape Fear,
etc., R. R. Co.*, 99 N. C. 298, 6 S. E. 77, 6 Am. St. 521;
*Delaware, etc., R. R. Co.* v. *Cadow*, 120 Pa. St. 559,
14 Atl. 450, 6 Am. St. 730; *Wichita, etc., R. R. Co.*
v. *Davis*, 37 Kan. 743, 16 Pac. 78, 1 Am. St. 275;
*Baltimore, etc., R. R. Co.* v. *Trainor*, 33 Md. 542; *Vir-
ginia, etc., R. R. Co.* v. *White*, 84 Va. 498, 5 S. E.
573, 10 Am. St. 874; *Deans* v. *Wilmington, etc., R. R.
Co.*, 107 N. C. 686, 12 S. E. 77, 22 Am. St. 902;
*McDonald* v. *International, etc., R. W. Co.*, 86 Tex.
1, 22 S. W 939, 40 Am. St. 803; *Zemp* v. *Wilmington,
etc., R. R. Co.*, 9 Rich. Law (S. C.) 84, 64 Am. Dec.
763; *Kerwhaker* v. *Cleveland, etc., R. R. Co.*, 3 Ohio
St. 172, 62 Am. Dec. 246; *Northern Central R. W. Co.*
v. *State*, 31 Md. 357, 100 Am. Dec. 69; *Vicksburg, etc.,
R. R. Co.* v. *Patton*, 31 Miss. 156, 66 Am. Dec. 552;
*Adams* v. *Wiggins Ferry Co.*, 27 Mo. 95, 72 Am. Dec.
247; *Northern, etc., R. W. Co.* v. *State*, 29 Md. 420, 96
Am. Dec. 545; *Kline* v. *Central Pacific R. R. Co.*, 37
Cal. 400, 99 Am. Dec. 282; *Needham* v. *San Francisco,
etc., R. R. Co.*, 37 Cal. 409; *Davies* v. *Mann*, 10 Mees.
& W. 545; *Dowell* v. *General St. Nav. Co.*, 5 Ell. &
Bl. 194, 206; *Tuff* v. *Warman*, 5 C. B. N. S. 573; *Rad-
ley* v. *London, etc., R. W. Co.*, 1 App. Cas. 754; *Scott*
v. *Dublin, etc., R. W. Co.*, 11 Irish C. L. Rep. 377;
*Inland, etc., Coasting Co.* v. *Tolson*, 139 U. S. 551,
560; *Grand Trunk R. W. Co.* v. *Ives*, 144 U. S. 408;
*Austin* v. *New Jersey Steamboat Co.*, 43 N. Y. 75;
*Trow* v. *Vermont, etc., R. R. Co.*, 24 Vt. 495; *Wer-*

*ner* v. *Citizens R. W. Co.*, 81 Mo. 368; *Welsh* v.
*Jackson, etc., R. R. Co.*, 81 Mo. 466; *Frick* v. *St.
Louis, etc., R. W. Co.*, 75 Mo. 595, 610; *Chicago
etc., R. W. Co.* v. *Ryan*, 131 Ill. 474; and many other
American and English cases, too numerous to cite.
In *Baltimore, etc., R. R. Co.* v. *Trainor*, 33 Md. *supra*,
it is said: "By 'proximate cause' is intended an act
which directly produced, or concurred directly in pro-
ducing, the injury.    By 'remote cause' is intended
that which may have happened, and yet no injury
have occurred, notwithstanding that no injury could
have occurred, if it had not happened.    No man
would ever have been killed on a railway, if he had
never have gone on or near the track. But if a man
does, imprudently and incautiously, go on a railroad
track, and is killed or injured by a train of cars, the
company is responsible, unless it has used reason-
able care and caution to avert it, provided the circum-
stances were not such when the party went on the
track as to threaten direct injury, and provided that
being on the track he did nothing, positive or nega-
tive, to contribute to the immediate injury." The il-
lustration in this quotation from the Maryland case
is about the aptest of all the illustrations as to what
is proximate cause and what is remote cause.    The
plaintiff's act in the present case in going onto and
falling asleep upon the railroad track may have hap-
pened a half-dozen times, and yet no injury have oc-
currred, notwithstanding no injury could have hap-
pened if he had never done so.    Therefore, if negli-
gence it was, for him to have done so, it was not a
proximate cause of, nor did it proximately contrib-
ute to his injury, but was only a condition or remote
cause of such injury.    The findings of the jury clearly
show that the driver of the engine was in plain view

of the appellant in ample time to have avoided the injury by the exercise of ordinary care by stopping the engine. Therefore, under the unbroken current of authority, wherever the English common law prevails, already alluded to above, the appellee's engineer having knowledge of the appellant's antecedent negligence, and his perilous situation caused thereby, before the engineer did the negligent act causing the appellant's injury, that act became the sole proximate cause of appellant's injury, and appellant's antecedent negligence became the remote cause or a mere condition of such injury; that is, after the engineer came in plain view, as he did, of appellant's antecedent negligence, and peril caused thereby, in time to have avoided the injury in the exercise of ordinary care, then whether appellant was to be injured or not depended wholly and solely on whether appellee's engine driver exercised such ordinary care; and, as he failed to do so, such failure was the sole proximate cause of appellant's injury, and appellant's act, if negligence, was a mere remote cause or condition of his injury.

From this conclusion there seems, to my mind, absolutely no logical or moral escape, unless the authorities I have cited do not declare the law as it is in this State. It is said that, while these authorities express the law as it is in other courts of last resort, that such rule has been expressly rejected, and the contrary rule has been adopted, in this State, by this court. Should that prove to be so, I should respectfully bow to the authority of this court, though not without much regret at finding the court committed to a rule so fraught with injustice. To the claim that this court is committed to a doctrine contrary to the current authority elsewhere on this subject, I have given much patient, and, as I trust, impartial,

consideration; and I have reached the conclusion that no greater mistake could be well made than the supposition that this court is committed to the opposite rule from that for which I contend, and which prevails in other states on the question before us. The principal case supposed to have committed this court to the opposite doctrine is the *Pennsylvania Co.* v. *Sinclair*, 62 Ind. 301, 30 Am. Rep. 185. There is language used in that case which, if it had not been, as I think, purely *obiter dictum*, would justify the claim made that it commits this court to the opposite doctrine. But there was no question involved in that case calling for such a remark. The suit was for damages for killing appellee's intestate by a passing train; and the case was decided in this court on the evidence. The evidence showed that the appellant's train was running through the city of Fort Wayne at a high rate of speed, sufficient to make the company guilty of negligence; and, as it neared the street crossing where deceased was about to cross, it gave the usual alarm of bell and whistle, and though it was in broad daylight, about 2 o'clock in the afternoon, the approaching train in plain view and hearing of the decedent, and he being possessed of good eyesight, hearing, and all his faculties, and could, and doubtless did, hear the signals and the noise of the train, yet he paid no attention thereto, and stepped on the track at the street crossing, just immediately in front of the moving engine. There was no claim made that those in charge of the train had any reason to apprehend that the decedent could not both see and hear, or that he would not use these faculties to prevent him from stepping onto the track in front of the engine, or that the company was liable because it did not stop the train in time to avoid the injury, or that, by the exercise of ordinary care, its servants could

have done so. So that there was nothing in the pleading or evidence calling for the *obiter dictum* remark made by the learned justice delivering the opinion. It was as follows: "We are aware that there is a line of decisions establishing what is known as the English doctrine, to the effect that the plaintiff may recover, notwithstanding his own negligence exposed him to the risk of injury, if the defendant, after becoming aware of the plaintiff's danger, could, by the exercise of ordinary care and diligence, have avoided injuring him. *Radley* v. *The Directors L. & N. W. R. W. Co.*, 18 English Reports with Moak's Notes 37; Shearman & Redfield, Negligence, section 36; Wharton Negligence, section 388. But we do not feel justified in disturbing what has been long accepted in this State as the better doctrine, after much discussion and consideration."

It is not, and was not, true that the contrary doctrine had "been long accepted in this State as the better doctrine after much discussion and consideration." There was not a single case in this court up to that time either expressly or by implication holding that the contrary was the better doctrine; nor is the doctrine known as the English doctrine. Turning to the section of Shearman & Redfield on Negligence cited in support of the assertion that it is known as the English doctrine, I find that it does not state that it is known as the English doctrine; nor is any such statement found in the entire work that I have been able to find. Wharton on Neg., section 388, is also cited as authority for the statement. Turning to that section in Wharton, I find it states the doctrine just as it is stated in the other section of Wharton, I have already cited above, and substantially as the other authorities I have cited above, but not a word about it being known as the English doctrine.

On the contrary, it cites a long list of American decisions holding that doctrine.  Among them are the New York court of appeals, New Jersey equity, the supreme court of Pennsylvania, Illinois, Iowa, Missouri, supreme court of the United States, Connecticut, Ohio, Maryland, Wisconsin, Georgia, and other states, and but one English decision.  And last, but not least, it cites the Supreme Court of Indiana, as holding to the doctrine which the learned judge delivering the opinion we are reviewing denominates the English doctrine, and which he, in substance, stated had been rejected in Indiana after much discussion and consideration for what he calls the better doctrine.  The case thus cited by Wharton in support of the section cited in the *dictum* is *Indianapolis, etc., R. R. Co. v. Caldwell*, 9 Ind. 397.  That was a suit by Caldwell against the railroad company to recover damages for negligently killing his cattle. Caldwell recovered in the trial court, and the company appealed, and sought to defeat the recovery, on the ground that Caldwell was guilty of contributory negligence in permitting his cattle to run at large in the vicinity of the railroad.  It was held that the common law was in force in this State upon the subject, and required the owner of cattle to keep them inclosed on his own land, in the absence of proof of an order of the board of commissioners of the county permitting them to run at large.  So that it was held by this court in that case that the plaintiff was guilty of negligence in so permitting his cattle to run at large.  It was there said:  "This case, then, will be decided in accordance with the previous rulings of this court in like cases; which are: 1.  That where an injury happens to a party proximately through his own wrong he cannot recover for it.  But 2.  That where such injury happens by the proximate wrong of an-

other, he shall. be liable for it, even though the re-
mote negligence of the injured party may have contrib-
uted to produce it. * * * [citing] *Wright* v. *Brown*, 4
Ind. 95. This principle runs through every branch
of the law." This court held that, notwithstanding
Caldwell's antecedent contributory negligence in suf-
fering his cattle to run at large in the vicinity of the
railroad, he had a right to recover for the negligence
of the railroad company in killing his cattle, and af-
firmed the judgment.

This does not look like this court had at that time
accepted as the better doctrine that contributory neg-
ligence on the part of the plaintiff would in all cases
defeat his action for the defendant's negligence,
whether plaintiff's negligence was proximate or not.
The case of *Wright.* v. *Brown, supra,* cited in *Indian-
apolis, etc.,R.R. Co.* v. *Caldwell, supra,* was a case where
the owner of a flatboat sued Wright and others, own-
ers of the steamboat Wisconsin, for negligently run-
ning too fast and too close to plaintiff's flatboat, laden
with a cargo of goods insecurely and carelessly
moored to the wharf at Madison, on the Ohio river,
by which it was sunk, and, with its cargo, destroyed.
The right of recovery was upheld, notwithstanding
the plaintiff's antecedent negligence in mooring his
boat. In passing judgment upon the case, this court
there said: "At common law, however, the general
principle is that a party cannot recover anything for
an injury which his own fault directly contributes to
produce. *Halderman* v. *Beckwith*, 4 McLean 286; *Strout*
v. *Foster*, 1 How. U. S. 89. But there is a class of
cases establishing this doctrine, that where the
wrongful act immediately causing the injury, is the
work, and through the fault of one party alone, he
shall be liable for it, even though the damage such
act occasioned may be increased or entirely result

through some previous neglect of the other party in respect to the thing injured; and especially, if the party committing such wrongful act knows, at the time, of the previous neglect of the opposite party." Then the court goes on to quote the celebrated English donkey case of *Davies* v. *Mann*, 10 Meeson & Welsby, *supra*, with full approval, and the citation of numerous American cases declaring the same doctrine, winding up in upholding the plaintiff's recovery notwithstanding his antecedent contributory negligence, and affirmed the judgment. But that is not all. In the following cases the question was squarely presented and unequivocally decided by this court adjudging the law to be as in the other cases cited. *Wright* v. *Gaff*, 6 Ind. 416-420; *Evansville, etc., R. R. Co.* v. *Hiatt*, 17 Ind. 102; *Indianapolis, etc., R. R. Co.* v. *Wright*, 22 Ind. 376-382; *Neal* v. *Scott*, 25 Ind. 440. And the same was directly adjudged to be the law in the Appellate Court in the *Indiana Stone Co.* v. *Stewart*, 7 Ind. App. 563-566, 567; *Summit Coal Co.* v. *Shaw*, 16 Ind. App. 9. This shows that the learned justice delivering the opinion in the Sinclair case gravely erred in his *obiter dictum* by overlooking the Indiana cases cited above, because at that very time this court had established the exact opposite doctrine to that which he said it had, and which he denominated the better doctrine; and no such doctrine as he denominates the better doctrine had ever up to that time been declared or adjudged by this court to be the law. It has been so often decided by this court that the language used in the opinion is always to be restricted to the case before the court, and is authority only to that extent, and that it is only the points arising in the case and that are decided that are deemed as authority, that I scarcely need cite the decisions. *Lucas* v. *Board, etc.*, 44 Ind. 524. Therefore the *dictum*

quoted from the Sinclair case is no authority what-
ever. Hence the law as declared in the six early cases
in this court I have quoted from and cited has been
the law for forty years in this State, in harmony with
the uniform current of authority elsewhere, unless
this court has since either directly or indirectly over-
ruled those cases.

I am told that this court has established a different
rule in a later case than any of those to which I have
referred, and that case is *Evans* v. *Adams Express Co.*,
122 Ind. 362. It is true that was a suit by Evans
against the express company for the negligence of the
driver of its express wagon in driving the same
against Evans while he was standing out in the street,
devoted to the use of vehicles and horses. It is true
that a recovery was denied in that case in the trial
court on the ground of the plaintiff's contributory
negligence, which was affirmed in this court. The
facts there were that the collision occurred after
dark, in one of the streets in Princeton. The plaintiff
was standing and talking with two other men, about
eight feet from the curb, near the margin of the
traveled track over which horses and vehicles were
accustomed to pass, there being, however, about
thirty feet of space in the street over which horses
and wagons might have been driven without coming
in contact with the plaintiff. It was not so dark but
that persons standing, or a horse and vehicle ap-
proaching, on the street, could be seen. The boy driv-
ing the express wagon having another boy in the
driver's seat with him, and, within about twelve feet
of the place where the plaintiff and his friends were
standing, observed them. Seeing two of them move
out of the way, and his attention being attracted in
another direction, he did not afterwards see the plain-
tiff until the wagon wheel struck and threw him to

the ground, inflicting painful injuries on his person. The jury found, in answer to special interrogatories, that the plaintiff was not in the exercise of ordinary care when he was injured. That finding was upheld by the trial court, and by this court on appeal. The driver, though negligent, in failing to see the plaintiff in time, made the negligence of the two persons concurrent, and hence the negligence of each was a proximate cause of the injury. The attempt was made to have this court adjudge that, as the negligence of the plaintiff was antecedent to that of the express drivers, that the plaintiff's negligence was not proximate, and hence did not proximately contribute to his injury. This court decided the question thus presented, and, in doing so, squarely and unequivocally adjudged the law to be as laid down in the six cases cited above, *Wright* v. *Brown; Wright* v. *Gaff; Evansville, etc., R. R. Co.* v. *Hiatt; Indianapolis, etc., R. R. Co.* v. *Caldwell; Indianapolis, etc., R. R. Co.* v. *Wright,* and *Neal* v. *Scott, supra,* in the following language: "We quite agree that if the driver of the express wagon saw the appellant standing in the street, it was his duty to turn out and not drive his wagon upon him, and if the facts presented a case in which it appeared that the driver, after seeing the appellant, had any reasonable ground to apprehend that he was not aware of the approaching wagon, and was unconscious of the danger that was imminent, a recovery would have been justified notwithstanding the antecedent negligence of the appellant. *Cincinnati, etc., R. W. Co.* v. *Long,* 112 Ind. 166; *Indianapolis, etc., R. W. Co.* v. *Pitzer,* 109 Ind. 179; Shearman & Redfield Neg. (4th ed.), section 61. One whose negligence has contributed to an accident from which he has sustained injury, will not be debarred the right to recover if the defendant, after having discovered his

peril, having also reasonable ground to believe him unconscious of danger, or unable to avoid it, might himself, by the exercise of ordinary diligence, have prevented the mischief which followed. The ground upon which a plaintiff may recover notwithstanding his own negligence, is, that the defendant after becoming aware of the danger to which the plaintiff was exposed, failed to use a proper degree of care to avoid injuring him." But this court held that, because the express driver did not see the plaintiff in time to avoid injuring him, that made the negligence of both parties concurrent or proximate, and the case to fall within the general rule that the plaintiff's proximate contributory negligence will defeat a recovery by him. Thus, we find it to be distinctly adjudged to be the law in that case that there may be a recovery by the plaintiff, notwithstanding his own antecedent negligence, if the defendant discovered such antecedent negligence in time to enable him, in the exercise of ordinary care, to avoid injuring the plaintiff, precisely as it had been adjudged thirty-six years before by this court, in *Wright* v. *Brown, supra.* As indicating that the court so intended to adjudge in the Evans case, I turn to the section of Shearman & Redfield on negligence involved in the citation quoted, and find the following language used: "Section 99. It is now perfectly well settled that the plaintiff may recover damages for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if such injury was more immediately caused by the defendant's omission, after becoming aware of the plaintiff's danger, to use ordinary care for the purpose of avoiding injury to him. We know of no court of last resort in which this rule is any longer disputed; although the same rule, in substance, but

inaccurately stated, has been made the subject of strenuous controversy." Thus, we see that this court is as thoroughly committed to the doctrine for which I contend as it well can be, notwithstanding the remarks in the Sinclair case, *supra*. But that is not all. This court has not only not accepted the contrary doctrine at all, but has in many other cases expressly recognized and upheld the rule laid down in the Indiana cases I have referred to. For instance, that rule is expressly recognized in *Pittsburg, etc., R. R. Co.* v. *Karns*, 13 Ind. 87. And such rule is expressly recognized in *Louisville, etc., R. W. Co.* v. *Bryan*, 107 Ind., at page 53, in the following language: "Where one person negligently comes into a situation of peril, before another can be held liable for an injury to him, it must appear that the latter had knowledge of his situation in time to have prevented the injury. Or it must appear that the injurious act or omission was by design." The rule was expressly recognized in *Pennsylvania Co.* v. *Myers, Admx.*, 136 Ind., at page 261, by the use of the identical language. And the rule has been indirectly recognized by this court and the Appellate Court in holding that the plaintiff's contributory negligence cannot defeat his recovery, unless it was a proximate cause of his injury, in the following cases. *Korraday* v. *Lake Shore, etc., R. W. Co.*, 131 Ind., at page 264; *Matchett* v. *Cincinnati, etc., R. W. Co.*, 132 Ind., at page 341; *Evansville, etc., R. R. Co.* v. *Krapf, Admr.*, 143 Ind., pp. 665-666; *Noblesville Gas, etc., Co.* v. *Teter*, 1 Ind. App, at page 327. And these cases, expressly or impliedly holding that the plaintiff's contributory negligence cannot exonerate the defendant's negligence unless the plaintiff's negligence was a proximate cause of his injury, must be construed and understood in the light of the unbroken current of authority as to

what is proximate cause, both in this court and else-where. That current of authority is perfectly har-monious with the definition of proximate cause al-ready stated above; and I have been wholly unable to find a single case in either of the two courts of last resort in this State asserting a contrary rule, except the *obiter dictum* in the Sinclair case, *supra.*

But it is said that *Terre Haute, etc., R. R. Co.* v. *Graham,* 95 Ind. 286, 48 Am. Rep. 719, holds the con-trary rule. But an examination of that case will de-monstrate that that is a grave mistake. There were no facts or pleadings in that case calling for a de-cision on such a question. It is a plain case of a plaintiff walking on a railroad track in broad day-light, in the same direction that the train was going; and, though the engineer gave the usual signals of warning, the plaintiff being possessed of good eye-sight and hearing, could have both seen and heard the train; yet he heedlessly walked on until the train overtook, struck, and injured him. There were two reasons why the company was adjudged not liable, independently of plaintiff's negligence; and they are that the engineer had a right to presume that the plaintiff would step off the track before being struck, and, when the engineer found that he would not, it was impossible to stop the train in time to avoid in-juring him. Like the Sinclair case, there was nothing in the case calling for the determination of the rule I am contending for. In quoting from the Sinclair case, *supra,* on the subject of the difference between gross negligence and wilfulness, the *obiter dictum* in that case already quoted above is also quoted in the Graham case, *supra;* but there is not a word in the latter case attempting to apply the *dictum* to any part of the case, for there is no point decided in the case to which it is applicable. So, that case furnishes no

authority for the principle asserted in the *dictum.*  I am also told that the *Indianapolis, etc., R. R. Co.* v. *McClaren, Admr.*, 62 Ind. 301, holds the same rule as stated in the *dictum* in the Sinclair case, *supra.*  But that is a serious mistake.  That was a case in its facts much like the Graham case, *supra*, except that it contains no such *dictum* as is quoted in the Graham case; and, except that, it was conceded by the plaintiff in that case that his contributory negligence would preclude his recovery, unless the facts showed that those in charge of the train ran it against him wilfully and purposely.  The facts being as they were in the Graham case, *supra*, it was held that they did not show a wilful and intentional killing.  But there was no holding either *pro* or *con* as to the rule I am discussing.

I therefore, with profound deference for the opinion of the majority of my brothers, feel deeply impressed with the belief that there is no logical or moral escape from the conclusion that the rule is well established, and has been for over forty years, in this State, that a plaintiff may recover for a negligent injury, notwithstanding his own antecedent negligence, provided the defendant discovered such antecedent negligence in time to have avoided injuring the plaintiff by the use of ordinary care, and that such rule, in the language of Shearman & Redfield, is no longer disputed in any court of last resort.  I therefore sincerely deplore the departure therefrom, not only because it unsettles a long established rule, but because the rule commends itself to the dictates of an enlightened sense of justice, and the contrary rule is harsh, unjust, and cruel.

But it is said the answers to the interrogatories show that the engineer did not discover the perilous situation of the sleeping boy on the track until the

engine ran onto him, and inflicted the injury, and hence it is claimed the rule I have been discussing has no application to the case. It is true those answers show that neither the engineer nor fireman saw the plaintiff before he was run over and injured by their engine. But the findings of the jury also show that it was daylight, and in a populous city, approaching a crossing, where children were liable to be, and that the sleeping child was in plain view from the engine for a distance of 300 feet before it reached him, and could have been seen by the engineer and fireman if they had looked. It has long been established law in this court that a railroad track is an indication of danger, and where one attempts to go upon or cross the same, he must listen for signals, notice signs put up as warnings, and look attentively up and down the track, in order to his freedom from negligence. *Mann* v. *Belt R. R., etc., Co.*, 128 Ind. 138; *Hathaway* v. *Toledo, etc., R. W. Co.*, 46 Ind. 25; *Cincinnati, etc., R. R. Co.* v. *Butler*, 103 Ind. 31; *Smith* v. *Wabash R. R. Co.*, 141 Ind. 92; *Pittsburg, etc., R. W. Co.* v. *Fraze*, 150 Ind. 576. It is also established in this court that such person "is presumed in law to have seen what he could have seen if he had looked attentively, and have heard what he could have heard if he had listened attentively. "The reason of this presumption is that it was the traveler's solemn duty to look attentively when approaching such a crossing, and listen attentively for a coming train." *Pittsburg, etc., R. W. Co.* v. *Fraze, supra; Cones* v. *Cincinnati, etc., R. W. Co.*, 114 Ind. 328. It was no less the solemn duty of the engineer to look attentively as he ran his engine through a populous city, approaching a highway crossing, where children were liable to be. The only difference between the negligence of the defendant and the negligence of the plaintiff is, one is contribu-

tory, while the other is original and independent. They are exactly alike in their essential elements, the same being a failure to exercise ordinary care under all the circumstances. The law imposes the same solemn duty on plaintiff and defendant to exercise due care,—the one to avoid injury to himself, and the other to avoid inflicting such injury. Therefore there is no reason why the one should be presumed in law to have seen or heard what he might have seen or heard had he looked or listened that does not equally apply to the other, where the circumstances are such as to make it his solemn duty to look or listen. So, the defendant is under the same solemn obligation to look and listen where the circumstances require it, as the plaintiff is, in order to escape responsibility for negligence. Therefore I think it quite clear, that the law presumes that the engineer did see the sleeping child on the track in time to avoid running over it, because he might have seen it had he looked, *Indianapolis, etc., R. W. Co.* v. *Pitzer*, 109 Ind. 179, and hence his negligence in running over it was the proximate cause of the injury to the boy, and *his* negligence in going and falling asleep on the track, if negligence it was, was not a proximate cause of such injury, but was a remote cause or a mere condition of such injury.

For these reasons, I am of opinion, that the answers to the interrogatories are not in conflict with the general verdict, and that we erred in the original opinion in holding that they were, and in affirming and in not reversing the judgment. Hence, I am of opinion that a rehearing ought to be granted.